UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TINA SPENCER, ) | CASE NO. 5:09CV1086 |
| ) | |
| Plaintiff, ) | MAGISTRATE JUDGE |
| ) | GEORGE J. LIMBERT |
| v. ) | |
| ) | |
| COMMISSIONER OF ) | **MEMORANDUM OPINION** |
| SOCIAL SECURITY, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

Tina Spencer ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the undersigned AFFIRMS the Commissioner's decision:

I.  **PROCEDURAL AND FACTUAL HISTORY**

On October 24, 2005, Plaintiff filed an application for DIB. Tr. at 63-68. Plaintiff's application was denied initially and on reconsideration. Tr. at 38-39, 47-50, 53-55.

On July 21, 2006, Plaintiff filed a request for an administrative hearing. Tr. at 46. On October 2, 2008, an ALJ conducted an administrative hearing where Plaintiff was represented by counsel. *Id*. at 715-741. At the hearing, the ALJ heard testimony from Plaintiff and Thomas Gusloff, a vocational expert. *Id*. On January 30, 2009, the ALJ issued a Notice of Decision - Unfavorable. *Id*. at 22-37. Plaintiff filed a request for review, which the Appeals Council denied. *Id*. at 6-10.

On May 12, 2009, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On September 14, 2009, Plaintiff filed a brief on the merits. ECF Dkt. #14. On December 10, 2009, Defendant filed a brief on the merits. ECF Dkt. #18. Plaintiff has not filed a reply. *See* ECF Docket.

**II**.     **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ found that Plaintiff has the following severe impairments: cervical stenosis, headaches, a bipolar disorder, and a substance abuse disorder. Tr. at 27. The ALJ determined that Plaintiff did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). Tr. at 28. The ALJ specifically considered Listings 1.04, 12.04, and 12.09. The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) 416.967(b), except that she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl; she must avoid concentrated exposure to workplace hazards such as unprotected heights and dangerous moving machinery; and she is limited to unskilled jobs due to her moderate deficiencies in concentration, persistence, and pace. Tr. at 29. The ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. Tr. at 35-36. The ALJ therefore concluded that Plaintiff was not disabled. *Id*. at 36-37.

**III.**   **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits.  These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§

404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V. ANALYSIS

### A. Whether the ALJ erred in assessing Plaintiff's RFC

Plaintiff contends that the ALJ erred in analyzing evidence of her possible drug-seeking behavior. ECF Dkt. #14 at 12. Plaintiff states that she does not deny the evidence of drug-seeking behavior that the ALJ cited. *Id*. Plaintiff contends that the ALJ should have made a disability determination and then analyzed whether substance addiction is a contributing factor material to the determination. *Id*. at 13 citing 20 C.F.R. § 404.1535, § 416.935. Plaintiff contends that the ALJ improperly determined that she had a substance abuse disorder and used evidence of substance abuse

-3-

to undermine Plaintiff's allegations and accordingly found her not to be disabled. *Id.* Plaintiff further notes that two of her treating physicians were aware of the volume of medications and her history of pain complaints when they opined that she was unable to work for physical and mental reasons. *Id.* at 13-14.

Defendant contends that the ALJ properly considered Plaintiff's exaggeration of her symptoms as a factor in assessing her credibility. ECF Dkt. #18 at 7. Defendant contends that the ALJ determined that Plaintiff's drug-seeking behavior detracted from her complaints of limiting pain. *Id.* citing Tr. at 30-34.

Plaintiff challenges whether the ALJ could appropriately consider her drug-seeking behavior in assessing her credibility. ECF Dkt. #14 at 12. Plaintiff contends that "The ALJ's finding that Plaintiff retains the residual functional capacity to perform a reduced range of light, unskilled work is not supported by substantial evidence," but then she claims that drug-seeking behavior "does not bear on whether Plaintiff suffers medically determinable severe impairments, whether these impairments meet the criteria outlined in the Listing of Impairments, or whether Plaintiff retains a residual functional capacity to perform work." ECF Dkt. #14 at 11, 12. The Court notes that Plaintiff never names a severe impairment, listing, or RFC restriction that the ALJ should have considered. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (internal citation omitted). The Court notes that the ALJ found Plaintiff to have a substance abuse disorder and considered Listing 12.09, which pertains to substance abuse disorders. Without some indication as to what severe impairments, listings, or restrictions the ALJ should have considered, the Court is left without direction. Therefore, the Court restricts its review to the appropriateness of the ALJ's consideration of Plaintiff's alleged drug-seeking behavior on her credibility related to complaints of pain. *See Heston v. Commissioner of Social Sec.*, 245 F.3d 528, 534-35 (6th Cir. 2001) (arguments not raised in the district court are deemed to be waived).

-4-

The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 416.929, SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Here, the ALJ found that Plaintiff had medically determinable impairments that could reasonably be expected to cause the alleged symptoms. Tr. at 30. The ALJ then clearly and specifically stated that Plaintiff made frequent visits to emergency rooms and ambulatory care facilities requesting narcotics, where staff report that she is "well known" to them. *Id*. The ALJ determined that these visits and requests "diminish the credibility of her pain complaints." *Id*. The ALJ developed a comprehensive chart detailing the incidents where Plaintiff had reported to the emergency room and specifically requested various forms of medication, including Soma, Demerol, Nubain, and "narcotics." Tr. at 31-34. The ALJ noted that Dr. Mannos denied narcotic medication, and the Plaintiff sought treatment from the emergency room, but she left against medical advice when narcotic medication was denied. Tr. at 30.

The Court finds that the ALJ properly considered Plaintiff's drug-seeking behavior as one factor in assessing credibility. Another district court has upheld similar decisionmaking by an ALJ in *Ranker v. Barnhart,* No. 2:06-0035, 2008 WL 2941336at *24 (M.D.Tenn., July 16, 2008), unreported. The Seventh Circuit Court of Appeals has recently noted that "Several cases approve discounting the testimony of a claimant who has engaged in drug-seeking behavior" *Kellems v. Astrue*, No. 09-3254, 2010 WL 2640190 at *3 (7th Cir. June 29, 2010), unreported, citing *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir.2009); *Poppa v. Astrue*, 569 F.3d 1167,1171 (10th Cir.2009); *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir.2008); *Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir.2003); *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir.2001). The *Kellems* court observed that no court has defined what constitutes drug-seeking behavior. *Id*. The court noted that the claimants in the aforementioned cases have a common thread, each obtained, or attempted to obtain, pain medication by deceiving or manipulating a medical professional. *Id*. The *Kellems* court ultimately reversed the ALJ's assessment of the claimant's credibility because there was not "any evidence in the record that [the claimant in *Kellems*] obtained, or attempted to obtain, pain medication by deceiving or manipulating a medical professional." *Id*.; *see also Anderson*, 344 F.3d at 815 (Where a doctor observed that the claimant was "somewhat manipulative" in his efforts to convince him of his pain and the court held it was proper for the ALJ to consider this evidence.).

Even applying the standard articulated in *Kellems*,[1] there is some evidence of deceit and or manipulation in this case that the ALJ could consider.  The ALJ noted that Plaintiff failed to attend physical therapy or follow-up appointments after being advised to do so by the emergency room.  Tr. at 30, 31.  Rather, Plaintiff continually returned to the emergency room to receive pain medications, where a physician noted that "She has been here multiple times in the past asking for narcotics. . ."  Tr. at 214.  The ALJ noted that Plaintiff was "well known" to emergency room physicians, where she frequently requested narcotics.  Tr. at 30.  One specific record shows that Plaintiff told an emergency room physician that Dr. Mannos "does not give her anything."  Tr. at 196; *see Berger v. Astrue,* 516 F.3d 539, 546 (7th Cir. 2008) (in assessing credibility, an ALJ consider the fact that a claimant seeks medication from one doctor while under the care of another doctor who is also prescribing medication).  The physician noted that she was aware of the medications that Dr. Mannos prescribed – specifically noting that she was on Baclofen, Valium, Trazodone, and Risperdal.  *Id*.  When the physician declined to provide narcotics, Plaintiff specifically asked for Nubain.  *Id*.  The physician declined to provide any narcotics for homegoing use.  *Id*.  On August 26, 2003, an emergency room physician noted that Plaintiff failed to follow up on emergency room visits in the past.  Tr. at 199.  Further, Plaintiff specifically requested a shot of Demerol or some home-going Vicodin.  *Id*.  When the physician offered to keep her for treatment, she left.  *Id*.  On another occasion, a physician noted "The patient is very clear that she does not want an IV.  She is specifically requesting Demerol."  Tr. at 216.

Plaintiff contends that the ALJ has assumed that Plaintiff's behavior was conscious and calculated, and not symptomatic of the underlying medical impairments.  ECF Dkt. #14 at 14.  However, Plaintiff has not directed the Court to any opinion stating that drug-seeking behavior was a symptom of any of her physical pain.  One district court has noted "Although drug-seeking behavior may affect a claimant's credibility if he [or she] seeks the drugs for recreational use, *see Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir.2003), the same conclusion does not follow if a

---

[1] The Court notes that in *Anderson*, 344 F.3d at 815, the Eighth Circuit considered both a misuse of medication and manipulative drug-seeking behavior as separate but related factors weighing on a claimant's credibility on the issue of limiting effects of symptoms.

claimant develops dependence to a medication legitimately prescribed by a physician for treatment of severe pain." *Preslicka v. Astrue,* Civil No. 07-4237 , 2009 WL 490014, *15 (D.Minn., Feb 26, 2009), unreported).  In this case, however, the evidence that the ALJ cited showed that on several occasions, Plaintiff sought narcotic medications, and refused other treatment when those medications were denied.  Further she did not seek follow-up care, but continued to return to the emergency room to seek narcotics, specifically asking for them for homegoing use.  Tr. at 196, 199.

Further, the ALJ did not consider Plaintiff's drug-seeking behavior in a vacuum, but rather, she considered it along with Plaintiff's activities of daily living, her inconsistent statements related to alcohol use which "cast[ed] a dark shadow over her veracity," and her failure to seek follow-up care.  Tr. at 34.  Additionally, even if Plaintiff's drug-seeking behavior was a result of a mental impairment, the ALJ could still appropriately consider it in assessing her credibility related to complaints of physical pain.  *See Chrisley v. Secretary of Health and Human Services*, No. 93-4396, 33 F.3d 54 (6th Cir. Aug. 11, 1994), unreported ("the ALJ properly considered Chrisley's mental impairment in assessing her credibility and her complaints of pain.").

The Court also notes that the ALJ considered that Plaintiff reported to the Aultman Pain Management Center in tears in January 2007, but Dr. Felden observed that her pain complaints did not follow a specific dermatomal pattern and she had only a slightly decreased range of motion in her cervical spine, and her grip and motor strength were normal.  Tr. at 31.  The records show that Dr. Felden ultimately diagnosed Plaintiff with "fibromyalgia by history".  Tr. at 587-88.[2]  Although Plaintiff does not raise a particular argument in regard to fibromyalgia, despite the fact that the ALJ did not even recognize it as a severe impairment, the Court notes that "unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs." *Rogers*, 486 F.3d at 243-244, citing *Preston*, 854 F.2d at 820 (6th Cir.1988) (per curiam) (noting that objective tests are of little relevance in determining the existence or severity of

---

[2]  In an earlier treatment note, where he also advanced a diagnosis of "fibromyalgia by history," Dr. Felden stated that he was "not convinced that [Plaintiff] does have the diagnosis of fibromyalgia." Tr. at 570, 691-92.  He further stated that he did not have enough information to be comfortable with that diagnosis.  *Id.*  He continued to advance the same diagnosis of "fibromyalgia by history" when he noted that her pain did not follow a specific dermatomal pattern.  Tr. at 587-88.

fibromyalgia); and *Swain v. Comm'r of Soc. Sec.*, 297 F.Supp.2d 986, 990 (N.D.Ohio 2003) (observing that "[f]ibromyalgia is an 'elusive' and 'mysterious' disease" which causes "severe musculoskeletal pain").

Nevertheless, the ALJ considered that during this visit Plaintiff specifically requested opiods and Dr. Felden declined to provide them. Tr. at 587-88. The ALJ further noted that other Pain Clinic notes indicated that Plaintiff did not follow recommendations to try a TENS unit and she failed to attend physical therapy. Tr. at 31; Tr. at 674; *see Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir.1995) ("[F]ailure to seek medical treatment may be inconsistent with a finding of disability."). The ALJ could properly consider Plaintiff's drug-seeking behavior at the Pain Clinic as a factor in assessing Plaintiff's credibility, especially in light of Plaintiff's other drug-seeking behavior, her failure to participate in physical therapy for complaints of pain, and her failure to use a TENS unit. However, even removing the ALJ's reference to the Pain Clinic, the ALJ's credibility determination is supported by other substantial evidence, discussed above, which Plaintiff does not challenge. *See*, *e.g.*, *McClanahan v. Astrue*, No. 2:07-cv-0005, 2009 WL 1684488, *16 (M.D.Tenn., June 16, 2009), unreported ("while the ALJ in this case certainly held plaintiff's failure to consistently pursue treatment or take pain medications against her, the undersigned must conclude from the presentation of this case and the otherwise substantial evidence supporting the ALJ's adverse credibility finding that any error here is harmless."); *Ahee v. Commissioner of Social Sec.*, No. 07-CV-12071, 2008 WL 4377652 at n. 1 (E.D.Mich., Sept. 22, 2008), unreported ("even without considering the ALJ's speculation that Plaintiff did not return to Dr. Soares as advised, as set forth above, there is substantial other evidence on which the ALJ based his credibility determination. ").

With regard to Plaintiff's substance abuse as a mental impairment, the ALJ specifically considered Listing 12.09, ultimately finding that the "B criteria" were not satisfied. Plaintiff has given the Court no reason to question this finding based on the drug-seeking behavior evidence. Further, Plaintiff has not identified any opinion of record demonstrating a limiting effect from her substance abuse, which the ALJ failed to consider in assessing Plaintiff's mental RFC. Notably, Plaintiff contends the record contains no evidence of drug seeking behavior in 2008. *See* Tr. at 18. Even if Plaintiff did articulate an argument pertaining to the listings or her RFC as it pertains to

substance abuse, there could be a question as to the durational requirement. Nevertheless, as above, the Court finds Plaintiff's arguments related to the Listings and RFC to be perfunctory and waived.

Given the caselaw demonstrating the appropriateness of an ALJ's consideration of drug-seeking behavior on the issue of credibility related to complaints of pain and given Plaintiff's activities in this case, the Court finds that the ALJ's decision to consider her drug-seeking behavior was appropriate.

### B. Whether the ALJ failed to comply with the Treating Source Rule

Plaintiff contends that the ALJ erred in assigning the weight that he did to Dr. Mannos' and Dr. Manudhane's opinions. ECF Dkt. #14 at 15-18. Specifically, Plaintiff contends that the ALJ erred in giving Dr. Mannos' opinion "no significant weight" because he is not a psychiatrist or psychologist, he did not provide specific limitations in functioning, and he did not address drug-seeking behavior. *Id*. at 16. Plaintiff contends that the ALJ erred in rejecting Dr. Manudhane's first opinion on the basis that he was not a treating physician at the time, not addressing his second opinion, not giving his third opinion significant weight because it did not address drug-seeking behavior, and giving "no weight" to his fourth opinion for failing to address Plaintiff's drug seeking behavior and relying quite heavily on subjective reporting. *Id*. at 17-18.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ

determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

With regard to Dr. Mannos, the Court notes that specialization and the scope of treatment are factors that an ALJ may consider in weighing opinions. 20 C.F.R. § 404.1527(d)(5); *see also* § 404.1527(d)(2)(ii)(" For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. "). Further, the ALJ appropriately noted that Dr. Mannos did not discuss why he believed Plaintiff was "disabled" or support that conclusion with specific functional limitations. Tr. at 35, Tr. at 445-46. "When a treating physician . . . submits an opinion on an issue reserved to the Commissioner-such as whether the claimant is 'disabled' or 'unable to work'-the opinion is not entitled to any particular weight." *Turner v. Commissioner Of Social Security*, No. 09-5543, 2010 WL 2294531 at *4, (6th Cir. June 7, 2010), unreported; *see also* 20C.F.R. §416.927(e)(1).

-11-

"Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Id*. (internal quotation and citation omitted). In *Turner*, a treating source opined that the claimant was unable to work" and was not "currently capable of a full-time 8-hour workload." *Id*. at *5. The Sixth Circuit held that the ALJ adequately addressed the opinion in stating that it was an opinion on an issue reserved to the Commissioner. *Id*. In this case, the ALJ appropriately observed that Dr. Mannos' opinion only concluded that Plaintiff was "disabled." Tr. at 35. Therefore, the Court finds that the ALJ's treatment of Dr. Mannos' opinion was supported by substantial evidence.

Plaintiff's argument that the ALJ inappropriately discounted Dr. Mannos' opinion for a failure to consider drug-seeking behavior lacks merit as well. An ALJ may consider the extent to which the opinion is consistent with the record as a whole. 20 C.F.R. § 404.1527(d)(4).

With regard to Dr. Manudhane, Plaintiff contends that he authored his first opinion in 2006, noting that he had seen Plaintiff for nine years. ECF Dkt. #14 at 18, n. 16 citing Tr. at 662. Defendant contends that Dr. Manudhane's repeatedly stated that the first time he saw Plaintiff was in October of 2005, which was nine *months* earlier. Tr. at 279. The Court notes that Dr. Manudhane explicitly stated in one report that he first saw Plaintiff on 10/10/05. Tr. at 141. The Court also notes that Dr. Manudhane's opinion from July of 2008 states that Plaintiff was a patient of 13 years. Tr. at 710. Despite this inconsistency, the ALJ was entitled to discount Dr. Manudhane's first opinion due to a lack of supportability. *See* 20 C.F.R. § 404.1527(d)(3). Plaintiff's own brief acknowledges that the administrative record only contains medical records dating back to 2005. ECF Dkt. #14 at 17. In other words, even if Dr. Manudhane did have a longer treating relationship in 2006, it was not supported by the documents contained in the administrative record.

To the extent that Plaintiff notes that the ALJ did not mention Dr. Manudhane's opinion from December 5, 2005, the Court notes that the opinion does not set forth any significant limiting restrictions. *See* Tr. at 137-139. Specifically, Plaintiff had no impairments in remembering, understanding, and following directions, maintaining attention, sustaining concentration, persisting at tasks, and completing them in a timely fashion. Tr. at 138. Dr. Manudhane opined that she had difficulty with anxiety and past issues of abuse and victimization limiting the ability to be trusting

or comfortable in the presence of others at times. *Id*. He opined that she had an average ability to react to the pressures in the work settings or elsewhere involved in simple and routine, or repetitive tasks. *Id*.

The ALJ appropriately discounted Dr. Manudhane's March 2006 opinion. Tr. at 279-83. The ALJ could consider the extent to which Dr. Manudhane's opinion was not consistent with the evidence. *See* 20 C.F.R. § 404.1527(d)(4). Further, Dr. Manudhane opined that Plaintiff had no limitations in activities of daily living, slight difficulties in maintaining social functioning, seldom deficiencies in concentration, persistence, or pace resulting in the failure to complete tasks in a timely manner, and on or two episodes of deterioration or decompensation in a work or work-like setting. Tr. at 283. Further, Dr. Manudhane opined that Plaintiff would have no difficulty working at a regular job on a sustained basis. *Id*. at 282.

The ALJ's decision to discount Dr. Manudhane's July 2008 decision was also supported by substantial weight because the ALJ had determined that Plaintiff was less than credible based upon her drug-seeking behavior, her inconsistent statements of alcohol use, her activities of daily living, and her failure to seek follow-up care. Tr. at 30-35. Although Plaintiff contends there was not evidence of drug-seeking behavior when Dr. Manudhane issued his opinion in 2008, the ALJ assessed her credibility as a whole and determined that "there exist good reasons for questioning the reliability of [Plaintiff's] subjective complaints." Tr. at 35. Further, Dr. Manudhane's clinical findings in the July 2008 opinion do not set forth limiting impairments, noting that Plaintiff was "alert, anxious, intermittently depressed and irritable, not currently suicidal or homicidal. No thought disorder or perceptual disorder." Tr. at 701-11. Dr. Manudhane did not state the basis for his opinion, but stated that Plaintiff was a patient for approximately 13 years. *Id*. at 710. His treatment notes mostly recite subjective complaints and his objective findings on mental status examinations do not demonstrate functional limitations. *See*, *e.g.*, Tr. at 652-662. Further, Dr. Manudhane showed no indication that he was aware of the extent of Plaintiff's narcotic usage through the emergency room. Accordingly, the ALJ was accurate in observing that Dr. Manudhane relied on Plaintiff's subjective reports of symptoms and limitations and accepted them as mostly true as reported. Tr. at 35. Therefore, the ALJ's decision to discount Dr. Manudhane's opinion was

-13-

supported by substantial evidence. *See* 20 C.F.R. § 404.1527(d)(4).

Accordingly, the Court finds that the ALJ's treatment of treating physician opinions of record was supported by substantial evidence.

## VI. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision and DISMISSES the instant case in its entirety with prejudice.


DATE:  August 31, 2010                     */s/George J. Limbert*
                                                                    GEORGE J. LIMBERT
                                                                    UNITED STATES MAGISTRATE JUDGE